# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

PLUMBERS AND PIPEFITTERS LOCAL
51 PENSION FUND,

                **Plaintiff,**

-vs-                                    **Case No.  6:08-cv-388-Orl-35DAB**

DARDEN RESTAURANTS, INC.,
CLARENCE OTIS, JR.,
C. BRADFORD RICHMOND,

                **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS CLASS ACTION COMPLAINT (Doc. No. 72)** |
| **FILED:** | **November 25, 2008** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

      This is a class action brought by Lead Plaintiff against Darden Restaurants, Inc. ("Darden"), and Individual Defendants Clarence Otis, Jr.,[1] and C. Bradford Richmond,[2] purporting to allege securities fraud under Section 10(b) and 20(a) of the Securities Exchange Act, as modified by the

---

[1] The Executive Chairman and Chief Executive Officer of Darden.(Class Action Complaint, ¶ 17(a).

[2] Chief Financial Officer, Principal Accounting Officer and Senior Vice-President of Darden (Class Action Complaint ¶ 17(b).

Private Securities Litigation Reform Act.  According to the Class Action Complaint (Doc. No. 56), during the class period (defined as June 9, 2007 through and including December 18, 2007), Defendants "made false and materially misleading statements about Darden's earnings potential for fiscal 2008 (June 1, 2007 to May 31, 2008), repeatedly assuring the market that the Company would achieve 10%-12% earnings growth when Defendants knew, or recklessly disregarded, that this projection lacked any reasonable basis." (Complaint ¶ 3).  Defendants move to dismiss, asserting that: 1) the projections are forward-looking statements that fall squarely within the PSLRA safe harbor provision; 2) the Complaint fails to sufficiently allege scienter with respect to any Defendant; 3) the Complaint fails under the judicial "bespeaks caution" doctrine; and 4) the § 20(a) claim fails because the underlying claim for violation of § 10(b) fails.  For the reasons set forth herein, the Court recommends dismissal of the Complaint.

### STANDARD OF REVIEW

*Motion to Dismiss Standard*

On a motion to dismiss, this Court accepts as true all well-pleaded allegations of the Complaint, and construes all reasonable inferences therein in the light most favorable to the plaintiff. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 n. 2 (11th Cir. 2001) (*citing Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n. 1 (11th Cir.1999)).  The Supreme Court has provided guidance on what constitutes a "well pled" complaint, requiring a plaintiff to supply more than just any conceivable set of facts tending to support a claim, but "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1973, 167 L.Ed.2d 929 (2007).  Recently, that Court has explained the two prong approach to evaluating whether a complaint meets this standard:

-2-

As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or " a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with "a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557, 127 S.Ct. 1955 (brackets omitted).
\*\*\*
But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949-50, __ L.Ed.2d ___ (U.S. 2009).  While the general rule mandates a court limit its inquiry to the four corners of the complaint when ruling on a motion to dismiss, an exception is granted in securities fraud cases to allow a court to "take judicial notice (for the purposes of determining what statements the documents contain and not to prove the truth of the documents contents) of relevant public documents required to be filed with the Securities and  Exchange Commission ("SEC"), and actually filed." *In re Sunterra Corp. Sec. Litig.*, 199 F.Supp.2d 1308, 1319 (M.D. Fla. 2002) (*quoting Bryant*, 187 F.3d at 1278).

*Rule 9(b)*

In order to survive a motion to dismiss in a securities fraud case, a plaintiff must also satisfy the requirements of Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting fraud be stated with particularity. *In re Recoton Corp. Sec. Litig.*, 358 F. Supp.2d 1130, 1138 (M.D. Fla. 2005). A plaintiff satisfies Rule 9(b)'s particularity requirement for fraud when the complaint sets forth "(1) precisely what documents or oral representations were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id. (quoting Ziemba*, 256 F.3d at 1202) (itself quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)). "A sufficient level of factual support for a [10b] claim may be found where the circumstances of the fraud are pled in detail. 'This means the who, what, when where, and how: the first paragraph of any newspaper story.' " *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (internal citations omitted).

*The PSLRA and Pleading Scienter*

In addition to the particularity pleading requirements required of the plaintiff under Rule 9(b), the Private Securities Litigation Reform Act of 1995 (herein "PSLRA"), codified at 15 U.S.C. § 78u-4(b), further heightens the pleading burden by requiring that the complaint contain: (1) factual specificity as to the alleged misleading or omitted statements[3] and (2) particular facts raising a "strong

---

[3]Section 78u-4(b)(1) states: In any private action arising under this chapter in which the plaintiff alleges that the defendant-(A) made an untrue statement of a material fact; or (B) omitted to state a material fact in order to make the statements made, in light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

inference" that a defendant acted with "the required state of mind."[4] Failure to meet either of these provisions mandates the dismissal of the complaint on the motion by any defendant. 15 U.S.C. § 78u-4(b)(3)(A).

With respect to the "required state of mind," the Eleventh Circuit has held that scienter is satisfied by a showing that the defendant had "an intent to deceive manipulate or defraud" or that the defendant "acted with a severely reckless state of mind." *Bryant,* 187 F.3d at 1282-83. Severe recklessness is " 'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it.' " *Id*. at 1282 n. 18 (*quoting McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989)). While averments of motive and opportunity to commit fraud "may be relevant to a showing of severe recklessness ... such allegations, without more, are not sufficient to demonstrate the requisite scienter." *Id.* at 1285. Further,  "scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004).

In evaluating allegations of scienter, the Court follows the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). In *Tellabs,* the Court held that as "[t]he strength of an inference cannot be decided in a vacuum" but

---

[4]Section 78u-4(b)(2) states: In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

is "inherently comparative," a court must engage in a comparative evaluation in determining whether a strong inference of scienter has been pled. 127 S.Ct. at 2510. A "strong inference" is one that is "cogent and compelling, thus strong in light of other explanations." *Id.*  District courts are directed to weigh the alleged inferences through a three-step process: 1) accepting all factual allegations as true; 2) "holistically" evaluating the complaint in its entirety to determine whether all of the facts give rise to a strong inference of scienter, 3) taking into account plausible opposing inferences of non-fraudulent intent. *Id*. at 2511.  A complaint will survive only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2503. As summarized by the Supreme Court:

> A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference. At trial, she must then prove her case by a "preponderance of the evidence." Stated otherwise, she must demonstrate that it is more likely than not that the defendant acted with scienter.

127 S. Ct. at 2513 (internal citations omitted).

### THE ALLEGATIONS OF THE COMPLAINT

According to the Complaint, Darden is the world's largest company-owned and operated full-service restaurant company, owning and operating more than 1,700 restaurants including Red Lobster, Olive Garden, Bahama Breeze, and Seasons 52.  Darden acquired LongHorn Steakhouse and Capital Grille as part of its acquisition of RARE Hospitality International, Inc. ("RARE") on October 1, 2007 (Comp. ¶2). During the class period (defined as June 9, 2007 through and including December 18, 2007), Defendants "made false and materially misleading statements about Darden's earnings potential for fiscal 2008 (June 1, 2007 to May 31, 2008), repeatedly assuring the market that the Company would achieve 10%-12% earnings growth when Defendants knew, or recklessly disregarded, that this projection lacked any reasonable basis." (Comp. ¶ 3).  Specifically:

**The June 19, 2007 Press Release**

The Complaint asserts that on this date, Darden issued a press release announcing its financial results for the fourth quarter and fiscal year ending May 27, 2007. For the quarter, the Company reported net earnings from continuing operations of $98.5 million, or $0.67 per diluted share, and sales of $1.46 billion. Defendant Otis, commenting on the results, stated, in pertinent part, as follows:

> We had competitively superior financial results from continuing operations this year in what was clearly a difficult environment for our industry and we also made considerable strategic progress. As a result, we begin fiscal 2008 in a strong competitive position and with great confidence we can achieve our goal of being the best in casual dining, now and for generations. When you combine the strength and resiliency that Olive Garden, Red Lobster and Bahama Breeze demonstrated this year, the promise that Seasons 52 continues to show, our talented and dedicated employees and the financial strength we possess, this Company's future is bright. And it's a future that we believe will be marked by an acceleration in profitable sales growth, beginning with our anticipated strong financial performance in fiscal 2008.

With regard to the Company's outlook, the press release stated, in pertinent part as follows:

> First 2008 Outlook
>
> Darden expects combined same-restaurant sales growth in fiscal 2008 of between 2% and 4% for Red Lobster and Olive Garden. The Company also expects approximately 3% unit growth in fiscal 2008, comprised mainly of Olive Garden restaurants.
>
> "We expect that solid same-restaurant sales growth at Red Lobster, Olive Garden and Bahama Breeze and strong cost management, combined with an acceleration in new restaurant expansion at Olive Garden, will result in 10% to 12% diluted net earnings per share growth from continuing operations in fiscal 2008," said Otis. "We believe this is a well-supported growth plan that reflects the emerging cost pressures in the casual dining industry and our expectation that casual dining sales growth will continue to be relatively soft before improving in the second half of our fiscal year."

(Comp. ¶29).

Plaintiff alleges that Defendants knew, or recklessly disregarded that the earnings growth projections of 10% to 12% were materially false and misleading because they lacked any reasonable basis in that Defendants knew, but failed to disclose that: i) Darden was utilizing a food cost inflation

assumption that was well below then-current inflationary rates; ii) due to special product promotions, Darden experienced a negative mix shift of .15% or about $9 million, as customers bought the less expensive promotional menu items; and iii) Darden incurred materially increased wage expenses due to the increase in the federal minimum wage from $5.15 to $5.85 per hour just prior to the start of the Class Period. (Comp. ¶¶ 30-31).

### The August 16, 2007 Press Release

The Complaint asserts that on this date, Darden announced a definitive agreement to acquire RARE, noting:

> Darden will finance the acquisition through cash and newly committed credit facilities. Darden expects to commence the tender offer for all outstanding shares of RARE common stock on August 31, 2007. *The transaction is expected to be neutral to Darden's earnings per share in fiscal year 2008, excluding one-time transaction and integration related costs and the impact of purchase price accounting adjustments.* [Emphasis added].

(Comp. ¶32).

Plaintiff asserts that the statement that the acquisition would be neutral to earnings was materially false and misleading because Defendants failed to disclose that there would be a margin shortfall of 5.1% from LongHorn and Capital Grill which, coupled with the other factors mentioned above, would make 10-12% growth unobtainable. *Id.* at ¶33.

### The September 18, 2007 Press Release

On September 18, 2007, Darden issued a press release announcing its financial results for the fiscal first quarter of 2008, the period ended August 26, 2007. The press release included the Fiscal 2008 Financial Outlook, reiterating:

> The Company continues to anticipate that diluted net earnings per share growth will be 10% to 12% in fiscal 2008, excluding one-time transaction and integration related costs and the impact of purchase price accounting adjustments related to the pending RARE Hospitality transaction.

Assuming the RARE Hospitality transaction closes in October 2007, as expected, the Company will provide an updated fiscal 2008 consolidated financial outlook including additional detail regarding the financial integration of RARE Hospitality, when it releases its second quarter earnings in December 2007.

(Comp. ¶34). Plaintiff alleges that this representation was false and misleading for the same reasons set forth above.

### The October 1, 2007 Press Release

On this date, Darden issued a release announcing successful completion of the merger with RARE. (Comp. ¶37). The release does not purport to revise earlier earnings growth projections, and Plaintiff asserts that this omission is, itself, false and misleading . *Id.* at ¶38.

Plaintiff alleges that on December 18, 2007, Darden issued a press release "radically revising" the 10-12% earning growth projections:

Fiscal 2008 Financial Outlook

Darden confirmed that it continues to expect combined U.S. same-restaurant sales growth in fiscal 2008 of between 2% and 4% for Red Lobster, Olive Garden and LongHorn, and that it expects to open approximately 65 net new restaurants this fiscal year, including new restaurants at LongHorn Steakhouse and The Capital Grille for October 2007 through May 2008. As a result, the Company expects total sales growth of between 19% and 20% in fiscal 2008, including sales from LongHorn Steakhouse and The Capital Grille for October 2007 through May 2008, compared to reported sales of $5.57 billion in fiscal 2007. *Given the dynamics of the current cost environment, which are due in part to the impact a weaker U.S. dollar is having on commodities and the cost of products Darden imports from many different countries, the Company now anticipates that diluted net earnings per share growth will be 2% to 4% in fiscal 2008, which includes the transaction and integration related costs and purchase accounting adjustments related to the RARE Hospitality acquisition. These costs and adjustments will adversely impact diluted net earnings per share by approximately five percentage points in fiscal 2008. Excluding the transaction and integration related costs and purchase accounting adjustments, diluted net earnings per share growth would be 7% to 9% in fiscal 2008.* [Emphasis added].

(Compl. ¶52)

Upon this 25%-30% downward revision of the Company's earnings growth projections, the price of Company's stock fell $7.68 per share, or over 21%, to close at $28.39 per share, on extremely heavy trading volume (*Id.* at ¶53).

Based on the above, Plaintiff claims fraud.

### ISSUES AND ANALYSIS

**Defendants' Reliance on Safe Harbor**

Defendants assert that PSLRA's Safe Harbor provision grants them immunity from liability for the statements at issue here.  The Safe Harbor provisions provide:

(c) Safe harbor

(1) In general

Except as provided in subsection (b) of this section, in any private action arising under this chapter that is based on an untrue statement of a material fact or omission of a material fact necessary to make the statement not misleading, a person referred to in subsection (a) of this section shall not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that--

(A) the forward-looking statement is--

(i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or

(ii) immaterial; or

(B) the plaintiff fails to prove that the forward-looking statement--

(i) if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading; or

(ii) if made by a business entity; was–

(I) made by or with the approval of an executive officer of that entity; and

(II) made or approved by such officer with actual knowledge by that officer that the statement was false or misleading.

15 U.S.C. § 78u-5(c) [5]

Thus, assuming the statements were untrue and material, they are nonetheless not actionable if they either 1) are identified as a forward-looking statement and are accompanied by meaningful cautionary statements; or 2) Plaintiff fails to show that the forward-looking statement was made with the approval of an executive officer with actual knowledge of the falsity of the statement.  Upon review of the statements at issue, the Court concludes that the Safe Harbor requirements are met.

*The Statements are forward-looking*

It is not disputed that the statements at issue here are directed to Darden's "earnings growth projections."  The PSLRA defines a forward-looking statement as:

> A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;
> (B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;
> (C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;
> (D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);
> (E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or
> (F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

---

[5]Of note, the Act also provides: " (e) Dispositive motion: On any motion to dismiss based upon subsection (c)(1) of this section, the court shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant."  15 U.S.C.A. § 78u-5. The Court takes notice of the full text of the press releases and other public materials filed with the motion.

15 U.S.C.A. § 78u-5(i)(1).  The statements at issue here fit within this definition as projections of earnings growth and future economic performance.[6]  *See Theoharous v. Fong,* 256 F.3d 1219, 1226 (11th Cir. 2001) (statements that "we believe that the DP unit may be profitable in each quarter this year" and "we . . .expect 20% revenue growth in 1997 over 1996" were forward-looking because they pertained to future economic performance.)  Moreover, the statements were identified as forward-looking statements in the Press Releases.

While Plaintiff acknowledges that the growth projection statement is forward-looking (although it challenges the cautionary language prong), it contends that Otis' statement that the growth plan is "a well-supported growth plan that reflects the emerging cost pressures in the causal dining industry" is not forward looking, but a statement of contemporaneous fact.

The disputed statement is part of a press release that contains not only predictive, but also historical and contemporaneous elements.  Taken as a whole, the press release falls squarely within the statutory definition of a forward-looking statement.  The overall gist of the release was that Darden felt it was poised for future growth.  The historical and contemporaneous elements of the statement were offered to support that main premise and must be considered in their full context.

The entire quote reads: "We *expect* that solid same-restaurant sales growth at Red Lobster, Olive Garden and Bahama Breeze and strong cost management, combined with an acceleration in new restaurant expansion at Olive Garden, *will result in 10% to 12% diluted net earnings per share growth from continuing operations in fiscal 2008*," said Otis. "We believe this is a well-supported *growth plan* that reflects the emerging cost pressures in the casual dining industry and *our expectation that*

---

[6]"We *expect* that solid same-restaurant sales growth at Red Lobster, Olive Garden and Bahama Breeze and strong cost management, combined with an acceleration in new restaurant expansion at Olive Garden, *will result in 10% to 12% diluted net earnings per share growth from continuing operations in fiscal 2008*," said Otis. "We believe this is a well-supported *growth plan* that reflects the emerging cost pressures in the casual dining industry and *our expectation that casual dining sales growth will continue to be relatively soft before improving* in the second half of our fiscal year." (emphasis added).  *See also* "The Company continues *to anticipate that diluted net earnings per share growth will be* 10% to 12% in fiscal 2008" and *"The transaction is expected to be neutral to Darden's earnings per share in fiscal year 2008."*

*casual dining sales growth will continue to be relatively soft before improving* in the second half of our fiscal year." (emphasis added).  This cannot be characterized as contemporaneous, when viewed in context.  The statement is directed to a growth *plan* – by definition, a projection for future economic performance.  The Safe Harbor provisions clearly protect such statements, as well as "any statement of the assumptions underlying or relating to" any statement of the plan for future operations.  *See* 15 U.S.C. § 78u-5(i)(1).

In *Harris v. Ivax*, 182 F.3d 799 (11th Cir. 1999), the court considered a press release containing a list of factors that could influence the defendant company's future performance. The list contained mixed statements– some forward-looking and some that had already been observed. *Id*. at 806. Rather than parsing each individual sentence, the court held that the list as a whole was a "statement" in the statutory sense and was due forward-looking treatment. *Id*. at 806-7 (noting that "when the factors underlying a projection or economic forecast include both assumptions and statements of known fact, and a plaintiff alleges that a material factor is missing, the entire list of factors is treated as a forward-looking statement.") *See also Ehlert v. Singer*, 245 F.3d 1313, 1317-18 (11th Cir. 2001) (holding that a section of a prospectus filed by the defendant company was a single forward looking statement under the PSLRA although the material omission in question was a present influence on the statement.)  All of the statements at issue here fall well within the ambit of forward-looking statements.  The first prong of the test is met.

*Cautionary Language*

Plaintiff next asserts that the cautionary language accompanying the Press Releases was not meaningful, as required for Safe Harbor.  To be meaningful, cautionary language is not required to mention every contingency that may undermine a forward-looking statement.  *In re: Sawtek, Inc. Securities Litigation*, 2005 WL 2465041, *11 (M.D. Fla. 2005); *Harris*, 182 F.3d at 807.  It is also

not necessary to warn of the specific factor that eventually causes the differing results. *Sawtek* at *10; *Harris* at 807.  It is only required that investors are warned of risks that are of similar significance to those that are actually realized.  "In short, when an investor has been warned of risks of a significance similar to that actually realized, she is sufficiently on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward." *Harris,* 182 F.3d at 807.

Here, Plaintiff alleges that the contributing factors that caused the reduction in Darden's earning projection were: an inadequate estimate of the food cost inflation rate; lower margins for the RARE acquisition; underperforming promotions; and the increased labor costs due to minimum wage laws. (Comp. ¶39, 40, 44, 46, 48.)  A review of the cautionary language contained in the Press Releases and the accompanying public filings, however, are replete with statements that speak to these perceived risks.

The June 19, 2007 Press Release noted:

> Forward-looking statements in this news release were made under the Safe Harbor provisions of the Private Securities Litigation Reform Act of 1995. *Certain important factors could cause results to differ materially from those anticipated by the forward-looking statements including* the impact of intense competition, *changing economic or business conditions, the price and availability of food, ingredients* and utilities, *labor and insurance costs,* increased advertising and marketing costs, higher-than-anticipated costs to open or close restaurants, litigation, unfavorable publicity, a lack of suitable locations, government regulations, a failure to achieve growth objectives, ...and other factors discussed from time to time in reports filed by the Company with the Securities and Exchange Commission.

(Doc. No. 72-5 at 4-emphasis added).

The September 18, 2007 Release contains similar disclosures, and also speaks to the pending acquisition of RARE:

> By their nature, forward-looking statements involve risks and uncertainties that could cause actual results to materially differ from those anticipated in the statements. . . . *These risks and uncertainties include successful completion of the proposed RARE Hospitality acquisition on a timely basis . . . the ability to achieve synergies following*

*the completion of the proposed acquisition, the impact of intense competition, changing economic or business conditions, the price and availability of food, ingredients . . ., labor . . . costs, increased advertising or marketing costs . . . and other factors and uncertainties. . . .*

(Doc. No. 72-7 at 3,4).

The August 16, 2007 and October 1, 2007 Press Releases contain similar language.  Further, the Company detailed the risks more specifically in the "reports filed by the Company with the Securities and Exchange Commission," incorporated by reference.  *See* e.g., 2006 Form 10-k (Doc. No. 72-10 at 15 *et seq.*); Form 10-Q for the third quarter of Fiscal Year 2007 (Doc. No. 72-12).   The Press Releases and the statements and reports filed and referenced in the Releases directly set forth and elaborate on the risk factors Plaintiff identifies.

With respect to the food cost inflation assumption, the cautionary statements address "the price and availability of food" and specifically warn that "operating margins for our restaurants are subject to change in the price of and availability of food commodities."  The "negative mix shift" allegedly caused by promotional pricing was directly met by cautionary language regarding "increased advertising and marketing costs" and noting "if our advertising and promotions become less effective than that of our competitors, we could experience a material adverse effect on our results of operations."  The increase in the federal minimum wage was met with language that the operations "are subject to federal and state laws governing such matters as minimum wages. . . . As federal and state minimum wage rates increase we may need to increase not only the wages of our minimum wage employees but also the wages paid to workers that are above the minimum wage . . ." (noting that if labor costs cannot be offset profitability may decline)  Finally, the impact of the acquisition of RARE was the subject of numerous disclosures, addressing the "risks and uncertainties" to include "the ability to achieve synergies following the completion of the proposed acquisition" as well as the possibility of "material unanticipated difficulties or expenses in connection with the integration of the

businesses of RARE."  The Company specifically noted that RARE had its own "business, customers, employees, culture, and system" and noted that "[e]ven if we complete the RARE acquisition and are able to successfully integrate the business of RARE into our operations, there can be no assurance that the acquisition will result in the realization of the anticipated benefits."  The cautionary language was directed to the risk factors at issue, and was meaningful and adequate.[7]

Plaintiff contends that the cautionary language cannot be adequate or meaningful because it was misleading, as the statements describe as contingent possibilities matters that they knew to have already occurred.  In the first place, as noted above, there is no factual support pled for the conclusion that the Company "knew" the effect of events that had yet to occur (the acquisition, the promotions, rising food costs) or the future impact of events that had occurred (the wage increase).   More importantly, there is no legal support in this district for such a contention.  *See Sawtek, supra,* 2005 WL 2465041 (M.D. Fla. Oct. 6, 2005) (rejecting contention "forward-looking statements cannot ever be subject to the safe harbor if the speaker knew at the time that the statements were false or misleading.")

As the statements were forward-looking, and accompanied by meaningful cautionary statements, the Safe Harbor provisions foreclose the complaint. 15 U.S.C. § 78u-5(c)(1)(A); *see also Harris,* 182 F.3d 799; *Ehlert,* 245 F.3d 1313; *Sawtek,* 2005 WL 2465041.

*Actual knowledge/Scienter*

---

[7]The Court rejects Plaintiff's contention that the disclosures were inadequate because somehow Darden "knew" the impact that cost inflation, the acquisition, the wage increase and the promotional pricing would have on the ability to meet growth projections.  No factual predicate to support such an allegation is pled, and the Court has difficulty imagining any factual predicate to support the clairvoyance suggested.  Indeed, the Court assumes that a for-profit corporation will strive to act in its own best interest and would shy away from, say, promotions that it "knew" were doomed to be unsuccessful.  Moreover, even if the company can be charged with knowledge of the increased wage, for example, this alone does not lead to the conclusion that the growth projections were erroneous as it says nothing of any economies or other factors that were believed to offset any increase in expenditures.

"The first prong of the safe harbor requires courts to examine only the cautionary statement accompanying the forward-looking statement. Courts should not examine the state of mind of the person making the statement." *Harris,* 182 F.3d at 803 (quoting H.R. Conf. Rep. 104-369, at 44 (1995).)  However, if the forward-looking statement is not accompanied by meaningful cautionary language then the plaintiffs are required to prove that either the individual making the statement or an executive officer authorizing the statement had actual knowledge that the statement was false or misleading. 15 U.S.C. § 78u-5(c)(1)(B); *Theoharous v. Fong*, 256 F.3d 1219,1224-25 (11th Cir. 2011.)  While the Court finds that the first prong is met and the statements are fully protected by the Safe Harbor provisions, in the interest of completeness, it addresses Defendants' remaining objections, and concludes that Plaintiff has not pled actual knowledge sufficiently.  Moreover, even if the statements were not forward-looking and Safe Harbor was not applicable, Plaintiff has failed to plead scienter.

The allegations here do not rise to the particularized level of actual knowledge required by the Safe Harbor provision.  At best, Plaintiff alleges that there was a difference between the food cost inflation rate used by Darden and the food cost inflation rate published by the USDA, a margin differential between the RARE operations and the legacy operations, an adverse effect of certain Company promotions, and that the minimum wage increases negatively impacted Darden's costs. Accepting all of this as true for present purposes, Plaintiff fails to *specifically* plead facts sufficient to indicate (as plausible) that these Defendants *knew* all of this to be true at the time the statements complained of were made, and knew that these facts would make it impossible for Darden to meet its projections.

As pointed out by Defendants, there are no allegations of how these Defendants came upon such knowledge; no meetings, internal report, confidential informants or other smoking guns are pled,

and, indeed, nothing is pled to support Plaintiff's conclusory assertion that these four factors are alone responsible for Darden not meeting its projections.  Tellingly, there are no factual allegations to support the conclusion that the Individual Defendants were *personally* aware of these four factors and "knew" the impact they would have on growth projections, nor are there any allegations that the Individual Defendants participated in insider trading during this time or gained anything at all from the purported fraud.

Similarly, assuming that the statements were outside the Safe Harbor provisions, the pleading does not give rise to a "cogent and compelling" inference of scienter.  There is simply nothing here to support any intent to deceive – let alone the strong inference sufficient to meet the scienter standard.  Liability cannot rest on so thin a reed.[8]  Actual knowledge under the Safe Harbor provision has not been sufficiently pled and the complaint otherwise fails to set forth a plausible inference of scienter.  The § 10(b) claim cannot stand as a matter of law.  As the § 20(a) claim is predicated on an inadequate § 10(b) claim, the entire complaint should be dismissed.

### RECOMMENDATION

For the reasons set forth above, this Court finds that the statements complained of are entitled to the protection of the Safe Harbor provisions and are therefore not actionable.  As such, Plaintiff has failed to plead an adequate cause of action under PSLRA, and  it is **respectfully recommended** that the motion to dismiss should be **granted.**

---

[8]Although Defendants also raise the defense of the "bespeaks caution doctrine," the Safe Harbor provisions are the statutory equivalent of the judicially created doctrine. *S.E.C. v. Merchant Capital, LLC,*  483 F.3d 747, 768 (11th Cir. 2007), *citing* 15 U.S.C. § 78u-5; *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir.1999).  As this is an action under PSLRA, the Court need not resort to the bespeaks caution doctrine. Under either, the result is the same.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 2, 2009.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy